And we will proceed with the next appeal. Sharon Powell v. Patrick Snook. Bruce Edenfield is here for the appellant Powell and Jason Wehmeyer is here for the affilee officer Snook. And Mr. Edenfield, are you ready to proceed with your argument? I am, Your Honor. You may. Good morning, Your Honors. Bruce Edenfield for the appellant Sharon Powell. This is an appeal from the district court's granting summary judgment to Officer Snook, the affilee, on the grounds of qualified immunity and thereby dismissing Ms. Powell's claims for excessive use of force that led to the tragic and unnecessary death of her husband. Now, before I get into the critical facts, I want to cut to the chase regarding Ms. Powell's legal argument right up front. In granting summary judgment, the trial court was wrong on two critical points of law, both of which go to the crux of Ms. Powell's claims and why, under the facts of this case, this court should reverse the trial court's grant of immunity. First, the district court and Officer Snook, again in this court, focused the analysis of the reasonableness of Officer Snook's conduct upon the one or two seconds before Officer Snook shot Mr. Powell. But this limiting inquiry ignores Supreme Court and 11th Circuit authority that have enforced claims considering, quote, the totality of the circumstances and not limit their inquiry to the moment when shots are fired. Second, the trial court erred in concluding that the law was not clearly established in June 2016, that Officer Snook's conduct violated the Fourth Amendment. In this regard, the trial court and Officer Snook ignored both Supreme Court and 11th Circuit assault precedent. Going back over 20 years to Tennessee v. Garner, this is Judge Wilson. Yes, sir. Can you point to a materially similar case stating that an officer must identify himself and give a warning before using deadly force when faced with a threat by an armed suspect? No. But we're relying on, in this case, we had fair notice in the Tennessee v. Garner case that I supplemented in my letter to the court, along with Smith v. Page in this circuit, citing the Lewis v. City of West Palm Beach, all say that when you have an obvious case, then you don't need a case that's obvious, an obvious case with no dependence on prior law as required. And that's how- So this is Judge Newsom. So are you saying that it is so obvious, even on fact here, where the decedent had a gun in his right hand, raised it, begun to raise it, and was fired upon? Well, first of all- Isn't that the critical fact? Sure it's a critical fact, but going back to Perez's decision, just because he has a gun is not the end of the inquiry. No, no, no, no, no. I didn't say just because he has a gun. He had a gun, and you have acknowledged in your brief that he began to raise it. Yes, but that's true. And if he came running out, pointing the gun at Officer Snook and charging towards him, which is what the appellee's argument is, then yes, I think I would lose this case. You should grant him qualified immunity. But that's not- So where- for the officer in the field, then, where is the line drawn between raising the gun and charging and pointing the gun? How far up his torso should the gun have to get before the officer gets qualified immunity? If he had no prior warning of what was getting ready to happen, if he's confronted with an ample opportunity to give a fair warning before he does raise the gun, then we've got to give him a warning. He had- they had 17 seconds where he was not charging the officer. He and his wife are in the garage. It takes 8.8 seconds for the garage door to open. Not one officer says anything, nothing. And then they get to the exit of the garage, Ms. Powell walking right behind her husband in her pajamas. He's walking, he's standing straight up, he's got the gun in his hand, but it's pointing straight down at the ground. At that point, Ms. Powell was not running, he was not crouched over, he never had two hands on the gun, and he had the gun- was not pointing the gun at any point in time, specifically in the 9.8 seconds while he's walking out of the garage, he had the gun pointing at the ground. And incredibly, during that entire time, the 17 seconds, neither officer Snook nor any officer said anything. Counsel, it wasn't 17 seconds. It took him 8 seconds to come out of the garage. My point is, he gets- yes, that's true. But the time we're talking about, Counsel, is 9 seconds. That's fine. And I say- Okay, wait, wait. Counsel, Counsel. I'm sorry. Let's take this step at a time. He has 9 seconds. Why couldn't a reasonable officer have believed, since he wasn't pointing the gun, wasn't raising the gun while facing in the officer's direction, that the safer thing to do would be to let him come out and see what happened, and see if he went back in, or see if he walked away from the officer, as opposed to draw attention to the location of the officer by making a sound? Well, first of all, he doesn't know there's an officer out there. He thinks it's a prowler, number one. No, no, Counsel, Counsel, I am sorry. We don't do this from the perspective of the person who was shot. We do it from the perspective of the officer. And why couldn't a reasonable officer have thought, or at least debated himself, for 9 seconds, whether or not the prudent thing to do would be to let the person come out, see what he wanted, see where he went, hope that he walked away in a different direction, and then what? I'm saying that the 9 seconds is more than ample opportunity under Tennessee v. Garner for him, to the officer, to have given a warning. Tennessee v. Garner, Counsel, Tennessee v. Garner has nothing to do with this case. In Tennessee v. Garner, it was a non-violent criminal, burglar, escaping. And the officer said, the sole purpose I shot him was to prevent his escape. Unarmed, young man, climbing a fence, the officer shot him. That's Tennessee v. Garner. Tennessee v. Garner didn't involve an armed suspect. It certainly didn't involve an armed suspect who was facing the officer and raising the gun as he faced him. Well, that's true, the facts of Tennessee v. Garner. But like the Fifth Circuit said in Cole v. Carson, which was an en banc decision, which went up to the Supreme Court and was denied certiorari. They specifically, in that case, the suspect did have a gun. Rather than pointing at the ground, the suspect had the gun pointing at his head. And so the issue became relevant. How much time was an ample opportunity? Even though the suspect had a gun pointed at his head, he's also suspected of being maybe a little off cue. But the bottom line is, they say that Tennessee v. Garner announced the principle that if and those facts, if there was ample opportunity to give a fair warning before the gun shot is fired, they've got to give it where feasible. And you don't need another case that with similar fact patterns in order to give notice to the officer that he had fair warning under Tennessee v. Garner. And all I mean, there are a number of cases out of the Fifth Circuit where they announced that principle. So the question becomes, was there ample opportunity for the full nine seconds when he's walking out, the guns pointed at the ground, he's not running at the officer, he's got ample opportunity to give fair warning that he's about to either either identify himself as the police, which they didn't do, or give him the command to drop his gun. And if he doesn't drop his gun, then obviously he could take whatever appropriate action he felt he needed. But I submit to the court, under the facts of this case, a reasonable officer in Snook's shoes had ample opportunity to give fair warning before he fired that shot. And that's our position. All right, thank you, Mr. Edenfield, we'll hear from Mr. Waymeyer on behalf of Officer Snook. Thank you, Your Honors. This is Jason Waymeyer on behalf of Sergeant Snook. I want to first address a few of the things that the court has gone through with opposing counsel. One is that we're dealing here with a very, very short time frame, and I think the nine seconds that Mr. Edenfield discussed is actually too long, frankly. The question is, how long does the officer have to react when the gun starts coming up? And frankly, that's under even Ms. Powell's testimony. Well, let me let me ask you this. This is Judge Wilson. Yes, sir. Did the nine seconds expire before the gun started coming up? That requires parsing Ms. Powell's testimony, frankly, her declaration and her testimony. Yeah, well, isn't that for the jury to decide? Well, in her deposition, she said it was just a few seconds from the garage to the point where he stopped. And then when he stops and the gun starts coming up, that is like a second or less. That's her deposition testimony. So that's what we have on the summary judgment stage. I guess my question is, and so I'm trying to figure out, it seems like a jury, given these circumstances, a jury could find here that there was an ample opportunity to give a fair warning. If the officer saw Mr. Wilson, there was nine seconds with a gun before he started raising it. And why couldn't a reasonable jury make that determination that the officer could have told them, put the gun down or I'll shoot? There was nine seconds to do that before he raised the gun. Isn't that a factual issue that should be left up to the jury? Well, before the gun starts coming out, before the gun starts threatening the officer, he has no reason to say I will shoot. So I think we're talking about police tactics, at least so far as your question is concerned. He doesn't see Mr. Powell with a gun in his hand and his side? I don't know when specifically he sees the gun. It's probably right when he sees Mr. Powell come around the corner from the garage. So with Mrs. Powell behind him in her pajamas and there's nine seconds that expire. I mean, it seems like based on the record that we have right now, if nine seconds, I mean, it's 10 seconds is a long time when you're dealing with a situation like that. If based on this record, a jury could determine that Officer Snook saw Mr. Powell with a gun at his side and his wife in her pajamas behind him, there was an ample opportunity to say, put that gun down or I'll shoot. And if a jury could make that determination, then it seems to me summary judgment should have been denied based on qualified immunity. I respectfully disagree, Your Honor, and I have a couple of points toward that. One is if Mr. Powell is simply walking with the gun down and he hasn't started pointing the gun, there's no reason for an officer to say I will shoot you. You put down the gun, et cetera. There's just no reason to do that. In fact, the court would probably say if Mr. Powell just had the gun down and he wasn't starting to point it at the officer, you may not be able to shoot him. So that kind of warning is, is I guess my question is, I guess my question is, shouldn't we leave that up to the jury? Well, I disagree for qualified immunity purposes, and this is my second point, because officers in this circuit have been granted qualified immunity in circumstances where there's there's plenty of time to warn, way more time to warn, and they don't do it. The warning rule, you know, basically there's no reason here. There's no time here, not enough time, at least under circuit precedent, to have to give the warning so that qualified immunity would be denied. We have officers where you're right. You're right. We have that case law. And in those cases, the armed suspect was a danger to the officer. But I guess my question is, why couldn't a reasonable jury decide that based on these facts, the armed suspect was not a danger to the officer before the officer shot him three times? Trying to I'm trying to make sure I understand Mr. Mr. Mr. Powell is in his own home. His wife is behind him in her pajamas. In his house. And so I guess my question is, why couldn't a reasonable jury decide that the nine seconds before he started raising the gun as he was walking out of his garage, why couldn't a reasonable jury decide that there was sufficient time for the officer to give a warning before he shot him? In my my response, I hope I'm not repeating myself, but it's that before he starts pointing a gun, there is no reason to give him a warning that I will shoot you. Furthermore, he's a uniformed police officer with a gun standing there. And any reasonable person would would know that if I point a gun at a police officer who's got a gun, he's going to shoot probably. So there is warning. There are cases where officers don't say anything, but they're a uniformed police officer with a gun pointing at the person saying stop or something along those lines or not even saying stop. And the person is on fair warning that that officer is going to shoot if they keep doing the aggressive action or they make some kind of aggressive action toward the officer. Furthermore, there are cases where the Tangelo v. Carr case where officers are hiding in the bushes. So the person who shot doesn't even see the officer, doesn't see a uniform, isn't given any warning, but the officer can defend themselves when they believe they're in imminent danger of harm. And so that's the rule that really controls this case. There's a recent case, Hunter v. City of Leeds, that says, quote, it is axiomatic that when an officer is threatened with deadly force, he may respond with deadly force to protect himself. That's the rule that controls this case. And when we come to qualified immunity, the question is, well, is there a case that tells the officer that what he's doing, what he did violated clearly established law? The answer is no. In fact, the cases go the other way. The Beckman v. Hamilton case is extremely close to this case. And the court says there is no Fourth Amendment violation, much less, you know, they don't even get to the qualified immunity question of clearly established law. So, you know, when we talk about qualified immunity, the case law absolutely told Sergeant Snook that his conduct is appropriate here. I have other prepared remarks, but if the court has any other questions, I would I would love to answer those. Well, I hear no questions, Mr. Waymire, thank you for your argument. Yes, sir. OK. And Mr. Edenfield, have you reserved some time for rebuttal? Yes, your honor. First, let me just address the fact that during the nine seconds the light is on in the garage as he and she, Mr. Snook and her husband are walking at a normal pace out of the garage. The fact that he has a gun in his hand, even though it's pointing at the ground, any reasonable officer who sees that should give a warning either to drop the gun, stop this. This is the Henry County Police. None of that was done. And in every case, there's no counsel. Counsel. Yes, it's just the cards. Let me ask you this. Your position is your position, then, is that when a law enforcement officer sees an armed person, he has to give a warning then. No, as opposed to when he thinks he's justified in using force, if the person doesn't drop the gun. No, no contention, as I understand it, by the defendants that he could have shot the man who had the gun in his hand that was pointing towards the ground. His position is that he was authorized to use deadly force only when the person started raising the man, started raising the gun up to waist level, hip level in his direction. So your position has to be that when you see a man with a gun, you've got to give a warning. Then you can't withhold a warning and to see what he's going to do with the gun. Right. Well, Tennessee, the gunner says if it's feasible, you must give the warning. The question is, the gunner said that if it's feasible, you must give the warning to shoot an unarmed fleeing burglar suspect. Well, then you run straight up to the council. Just speaking for me, Tennessee, the gunner gets you nowhere. The question is, is it and you go back and forth between obvious clarity and similar decision. But to the extent that you're you're doing obvious clarity, you're saying or even a similar decision, you're saying that as soon as the officer sees a person who has a gun, he must then give him a warning that he'll shoot him if he doesn't drop it, even though he doesn't intend to shoot him if he doesn't drop it. And he doesn't have any legal authority to shoot him if he doesn't drop it. He only has authority to shoot him if he presents a danger of the officer by raising the weapon. Your position has to be, does it not that you have to give the warning whenever you see someone with a firearm? I'm saying he's got to give a warning if it's feasible. That's exactly what ever whenever you see a person with a firearm, I'm just saying under the circumstances of the case, just like in Colby Carson, which the 5th Circuit Embankment squarely held. You have a suspect with a gun pointed at his head and you don't know what you're doing. And now you're doing something else. You can't say obvious clarity and then say circumstances of this case without telling me what the obviously clear rule is. So if you see a person come out of a house with a gun on their belt in a holster and you're a law enforcement officer, you've got to give a warning then, because if the person reaches, pulls the gun and raises it up to hip level, you can't shoot him unless you've given the warning when you saw him with it on his on his belt in his holster. Right. I'm saying if it's feasible to give the warning, Tennessee Garner requires the warning to be given and that regardless, regardless of whether the gun is being pointed in a way that would justify the use of deadly force. Absolutely. You don't wait for the last second and then see if you can kill the man. If you've got opportunity to give him fair warning to deescalate, deescalate the situation by either giving him a command or saying Henry County Police, my client's got a reasonable. Sorry, your honor, my time just went out on my clock. I apologize that that is my position. And a reasonable jury could conclude that any reasonable officer in snooks shoes had an opportunity to give the warning and could conclude that he violated our client's Fourth Amendment rights. Thank you, counsel. I would like I would like to just if I've got it any time under the three cases that Appley sites and his main cases in the Beckham v. Hamilton case that involved a suspect when officers arrived on the scene and the suspect had a gun and was yelling, was actively shooting at a neighbor's house and yelling, I'll kill you all. So it was active gunfire. The officers used stealth tactics, just like here. And by the time the officers came around to interview of the suspect after they came around the side of the house, the suspect didn't have a gun. But when they saw each other, the suspect turns to get a gun and got it in his hand. Yet searches to get the gun, you know, but only two to four seconds at last before the officers fired a shot. This court held that was legal. And I agreed with the court in that in the car versus pentagon of case. The officers were surveilling a house for repeated drug dealing. One of the officers was hiding in the bushes. And when another officer heard a noise which sounded like someone changing a bullet, another officer saw another. OK, I'll just conclude by saying in that case, pointing the gun at the officer was about to be shot. But no officer saw that the suspect was pointing the gun at an officer pentagonal and shot. And at that point in time, in every case. They have in every case he cite ample opportunity did not exist for them to give a fair warning. And they're all distinguishable on that basis. All right. Thank you, Mr. Edenfield. Thank you all your honors. I appreciate it. OK. And thank you, Mr. Waymeyer.